**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

MICHAEL J. BOGGAN,

Plaintiff,

vs.

CAROLYN W. COLVIN, Commissioner of Social Security,

Defendant.

2:13-cv-01687-MMD-VCF

**REPORT & RECOMMENDATION**

This matter involves *pro se* Plaintiff Michael J. Boggan's appeal from Defendant Carolyn W. Colvin's final decision denying Boggan social security benefits. Before the court is Boggan's motion to reverse or remand (#15). Colvin filed a motion to affirm (#20). For the reasons stated below, Boggan's motion to remand should be granted, and the Commissioner's motion to affirm should be denied.

**BACKGROUND**

On May 12, 2010, Plaintiff Michael J. Boggan filed his application for disability insurance benefits, and supplemental security income pursuant to the Social Security Act, 42 U.S.C. §§ 416,423. (Admin. Rec. at 30). Boggan's applications were denied initially and upon reconsideration. (*Id.*). On December 8, 2011, Boggan appeared with his attorney of record for a hearing before Administrative Law Judge ("ALJ") Norman Bennett. (*Id.*). The ALJ issued an unfavorable decision against Boggan on December 29, 2011, finding that Boggan's medical impairments did not individually, or in combination, meet the requirements for disability as defined by the Social Security Act. (*See* Admin. Rec. 30-41). Boggan subsequently requested an appeal of the ALJ's decision on February 6, 2012. (*See* Admin. Rec. at 23-24). The Appeals Counsel denied Boggan's request for review on July, 30, 2013, making the ALJ's decision a final decision of the Commissioner of Social Security. (Admin. Rec. at 1). On

September 23, 2013, Boggan commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Compl. (#4)).

**STANDARD OF REVIEW**

The Fifth Amendment to the Constitution protects the citizenry from the deprivation of property by the government without due process of the law. U.S. Const. amend. V. Applicants for social security disability benefits have a constitutionally protected property interest in those benefits. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When, as here, the Commissioner of Social Security renders a final decision denying a claimant benefits, the Social Security Act provides the District Court appellate jurisdiction to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C. § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

The Social Security Act limits the District Court's review of final decisions rendered by the Commissioner of Social Security. *See* 42 U.S.C. § 405(g). The court must review the Commissioner's decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court may set aside a decision by the Commissioner denying benefits only if the decision is not supported by substantial evidence, or the decision is based on legal error. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Substantial evidence is defined by the court as being "more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005) (*quoting Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)) *see also Batson*, 359 F.3d 1193. If the evidence is susceptible to more than one interpretation, and the ALJ's decision aligns comports with a reasonable interpretation of the evidence, the court must

uphold the ALJ's decision. *Perales*, 402 U.S. at 401. The court reviews the administrative record as a whole. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

The matter before the court is, therefore, not whether the court would have reached a different conclusion, but whether the Commissioner's decision was based on enough evidence from the record to support the conclusion. *Batson*, 359 F.3d at 1193 (defining "substantial evidence"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**DISCUSSION**

Boggan alleges that the ALJ's decision was not supported by substantial evidence within the record because the ALJ inappropriately relied on the testimony of a vocational expert (VE) regarding the number of jobs that exist in the national economy that Boggan can perform given his RFC. Prior to addressing Boggan's argument the court first discusses the statutory framework from which Boggan's allegation arises.

***A. The Statutory Framework***

President Roosevelt enacted the Social Security Act of 1935 in order "to provide for the general welfare." 79 Cong. Rec. 12793 (1935) (excerpt from Conference Report-Social Security H.R. 7260). The Act furthers "the Nation's basic commitment . . . to foster the dignity and well-being of all persons within its borders," and recognizes that "forces not within the control of the poor contribute to their poverty." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290, 96 L. Ed. 2d 119 (1987).

The claimant bears the initial burden of establishing that they have a disability within the meaning of the Social Security Act in order to qualify for disability benefits. *Roberts v. Shalala*, 66 F.3d

179, 182 (9th Cir. 1995). The Social Security Act defines disability as the "inability to engage in any substantially gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The Secretary of Social Security "has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

The five-step process is as follows. First, the claimant must show that she is not currently engaged in a substantially gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, then disability benefits are denied. *Id.* Second, the claimant must prove she has a severe medical impairment, or combination of impairments, that "significantly limits his physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Yuckert*, 482 U.S. at 141. "The ability to do basic work activities is defined as 'abilities and aptitudes to do most jobs.'" *Yuckert*, 482 U.S. at 141. Third, the claimant must be disabled. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) 416.925, 416.926.

Disability is determined in one of two ways. If the claimant can demonstrate that his impairment(s) meet or equal a listed impairment in the social security regulations at 20 C.F.R. Part 404, Subpart P, App. 1, the claimant is presumed disabled without considering age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Otherwise, if a claimant's impairment(s) do not

meet or equal a listed impairment, a residual functional capacity assessment will be conducted to determine what your physical and mental limitations are in a work setting. *See* 404.1520(e), 416.920(e).

The residual functional capacity assessment (RFC) is a function-by-function examination of a claimant's ability to perform the physical and mental demands of work-related activities on a "regular and continuing basis" despite limitations from impairments. (SSR 96-8p). The standard for "regular and continuing basis" is measured by an eight hour a day, five day a week work schedule. *Id.* The RFC is used to determine "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). The RFC tests a claimant's physical, mental, and other abilities affected by the claimant's impairments. 20 C.F.R. § 404.1545(b). All relevant medical evidence from the record will be used to determine a claimant's RFC, including evidence of impairments that are not determined to be severe. 20 C.F.R. § 404.1545(a). The totality of all medical and non-medical evidence relating to a claimant's impairment(s) will be assessed to determine the "total limiting effects" of both severe and non-severe impairments. 20 C.F.R. § 404.1545(e).

Once the assessment has concluded, the results will be used to determine what job exertion category the claimant can perform. 20 C.F.R. § 404.1567. There are five job exertion categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. *Id.* The RFC, and subsequent job exertion category certification are then used to determine if the claimant satisfies the final two steps of the five-step evaluation process. 20 C.F.R. §§ 404.1545(a)(i), 404.1545(a)(ii).

The fourth step of the process requires the claimant to prove that his impairment(s) prevent him from performing the physical and mental demands of his past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The RFC will be used to determine if the claimant can in fact perform their past relevant work, based on what job exertion category that job is classified under. *See* 20 C.F.R. § 404.1545; 20 C.F.R. § 404.1545. A claimant will pass step four only if their RFC limits their job exertion to a category lower than the exertion level required to perform their past relevant work. *Id.*

If the claimant satisfies his burden under the previous four steps, the burden then shifts to the Commissioner to prove that the claimant is capable of performing some other substantially gainful work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g); *Yuckert*, 482 U.S. at 145. The claimant's residual functional capacity, age, education, and past work experience, are all factors considered to determine if a claimant is capable of performing some other work in the national economy. *Id.* If the Commissioner proves that a claimant can perform some other suitable work, the claimant is given a chance to rebut by showing he is, in fact, unable to perform that work. *Id.*

The social security disability claim process begins with an initial disability determination by a state agency acting under the authority of the Secretary of Social Security. *See* 42 U.S.C. §§ 421(a), 1383b(a); 20 CFR §§ 404.1503, 416.903 (1986); *see also Yuckert*, 482 U.S. at 142. If the state agency denies the claim, the claimant may subsequently appeal the decision through a three-step administrative review process. *Yuckert*, 482 U.S. at 142. First, the state agency will reconsider the claim *de novo*. *See* 20 C.F.R. §§ 404.909(a), 416.1409(a); *see also Yuckert*, 482 U.S. at 142. Second, the claimant will appear for hearing conducted by an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. *See* 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 CFR §§ 404.929, 416.1429, 422.201 et seq. (1986); *see also Yuckert*, 482 U.S. at 142. Third, a claimant is entitled to seek review by the Appeals Council of the Social Security Administration. *See* 20 CFR §§ 404.967 et seq., 416.1467 et seq. (1986); *see also Yuckert*, 482 U.S. at 142.

Once a claimant exhausts all three administrative remedies, he may seek review in federal district court. *See* 42 U.S.C. 405(g); *see also Yuckert*, 482 U.S. at 142. However, the District Court's review of final decisions rendered by the Commissioner of Social Security is limited. *See* 42 U.S.C. § 405(g). The court must review the Commissioner's decision to determine if (1) the Commissioner has

applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

***B. The ALJ's Decision***

The ALJ followed the five-step sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 and issued an unfavorable decision against Boggan on December 29, 2011. (Admin.Red. 27). At step one, the ALJ found that Boggan had not engaged in substantial gainful activity since January 15, 2010, the alleged onset date. (Admin. Rec. at 32). At step two, the ALJ found that Boggan's degenerative disc disease, diabetes mellitus, hypertension, and major depressive disorder were medically severe impairments as defined by the Social Security Act. (Admin. Rec. 32-33). At step three, the ALJ found that Boggan did not have an impairment, or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Rec. at 33-34).

Continuing the process at step three, the ALJ reviewed the evidence within the record and found that based on Boggan's RFC, Boggan is capable of performing a full range of sedentary work. *Id.* The ALJ concluded that Boggan is capable of lifting up to 10 pounds occasionally, and 5 pounds frequently, and is able to complete an eight hour work day as long as he could alternate between sitting for six hours, and standing and/or walking for two hours in an eight hour work day. (Admin. Rec. at 34-35). The ALJ noted that Boggan would require a sit/stand option. (Admin. Rec. at 36, 86). The ALJ also found that an individual with Boggan's RFC would be limited to jobs requiring only "simple tasks and simple instructions." *Id.* At step four, the ALJ, relying on the testimony of the VE, found that Boggan was unable to perform his past relevant work. (Admin. Rec. at 39). At step five, the ALJ relied on the VE's testimony finding that jobs existed in significant numbers in the national economy that Boggan could perform based on his age, education, work experience, and residual functioning capacity. (Admin.

Rec. at 40-41). Based on these findings, the ALJ found Plaintiff not disabled at step five, and denied his application disability insurance benefits. (Admin.Rec. at 27).

***C. The ALJ's Decision is Not Supported by Substantial Evidence***

Boggan disputes the Commissioner's findings alleging that the ALJ's decision at step 5 of the 5-step process was not supported by substantial evidence for three reasons: (1) the ALJ based his decision on the unreliable testimony of the vocational expert (VE); (2) the ALJ improperly considered national data when determining the number of jobs in the national economy that the Plaintiff could perform; and (3) the vocational expert's testimony regarding the definition of call-out operator conflicted with the definition in the Dictionary of Occupational Titles (DOT). (Pl.'s Mot. for Remand (#15)). In response, the Commissioner argues that the ALJ correctly determined the number of jobs in the national economy that Boggan qualified for by relying on the vocational expert's testimony and other evidence within the record. (Def. Mot. to Aff. (#19)). For the reasons discussed below, the court disagrees.

**1. The ALJ's Decision to Rely on the Vocational Expert's Qualifications was Proper**

Boggan argues that the ALJ erred in relying on the VE's testimony regarding the number of jobs that Boggan can perform exist in the national economy because the VE has not worked as a vocational counselor for 10 years prior to the hearing. (Pl.'s Mot. for Remand (#15)). Boggan further asserts that the Appeals Counsel was required to consider the new evidence he submitted regarding the number of jobs that exist in the national economy when making its decision to deny his appeal. *Id.*

The court finds these arguments unpersuasive. When a claimant can no longer perform his past relevant work given his RFC, the Commissioner bears the burden of production to show a significant number of other jobs exist in the national economy that the claimant can perform given his age, education, work experience and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). The Commissioner can meet this burden in one of two ways; (1) "by the testimony of a vocational expert,"

or (2) "by reference to the Medical Vocational Guidelines ["Grids"] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Lorigo v. Colvin*, 1:13-CV-00405-SKO, 2014 WL 1577317 (E.D. Cal. Apr. 18, 2014). However, "when the Grids do not adequately take into account a claimant's abilities and limitations, the Grids are to be used only as a framework, and a vocational expert must be consulted." *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir.2002).

The Social Security regulations indicate that an ALJ is permitted to rely on a VE's testimony when determining if sufficient work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1566(e), 416.966(e). A claimant is not disabled unless he cannot engage in "work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives." 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c. "Work that exists in the national economy means work that exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

The ALJ determined that Boggan has a RFC to lift 10 pounds occasionally, and up to 5 pounds frequently, and capable of completing an eight hour work day as long as he could alternate between sitting for six hours, and standing and/or walking for two hours in an eight hour work day. (Admin Rec. at 34-35). The ALJ further determined that Boggan could only perform jobs requiring "simple tasks with simple instructions," and any such job must allow for a sit/stand option. At the hearing, the ALJ presented VE, Kenneth Lister, with a hypothetical question about whether a person with Boggan's limitations could perform Boggan's past relevant work, or other work in the national economy. (Admin. Rec. at 86). The VE testified that based on Boggan's RFC, he could not perform his past relevant work as a supply technician, nor his other relevant work as a heavy equipment operator. (Admin. Rec. at 86). Mr. Lister further testified that Boggan could perform a full range of sedentary work, listing three

examples of jobs that exist in significant numbers in the national economy; final assembler in the optical industry (final assembler), call-out operator, and dowel inspector. (Admin. Rec. at 87).

Mr. Lister testified that there were 125,000 final assembler jobs in the national economy, and that 40% of these jobs would accommodate Boggan's restrictions totaling approximately 50,000 jobs in the national economy that Boggan could perform. Mr. Lister further opined that there were approximately 218,000 call-out operator jobs of which 30% would accommodate Boggan's restrictions totaling 65,400 jobs Boggan could perform. Finally, Mr. Lister testified that there were approximately 150,000 dowel inspector jobs in the national economy of which 20% would accommodate Boggan's restrictions totaling 30,000 jobs Boggan could perform. Mr. Lister based his testimony on the Dictionary of Occupational Titles (DOT), the Occupational Outlook Handbook, his 28 years of experience as a vocational rehabilitation counselor where his primary responsibility was placing handicapped individuals in the work market, his knowledge of the recent recession, and his recent, and highly relevant experience working on Social Security and Workers Compensation cases. (Admin. Rec. at 89-90).

The Plaintiff contends that the ALJ's decision was not supported by substantial evidence because Mr. Lister has not worked as a vocational counselor for 10 years prior to the hearing, and he based part of his testimony on an outdated version of the Occupational Hanbook. (Pl.'s Mot. for Remand (#15)). Boggan attempts to rebut the VE's testimony using new evidence of job numbers from sources not mentioned in the Social Security Regulations, namely Job Browser Pro (JBP), and The Specific Occupational Employment Unskilled Quarterly (SOEUQ). *Id.* Boggan's new evidence was submitted for the first time to the Appeals Council. *Id.*

This argument is unpersuasive. Mr. Lister's professional qualifications undoubtedly qualify him as a vocational expert, and serve as a foundation for the ALJ's decision to deny Boggan's application for

disability, no other foundation is necessary. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("a VE's recognized expertise provides the necessary foundation for his testimony"). A VE's testimony qualifies as substantial evidence in support of an ALJ's decision. *Villareal v. Colvin*, EDCV 12-01640-JEM, 2013 WL 3071259 (C.D. Cal. June 18, 2013). Mr. Lister used the 2007 version of the Occupational Handbook, as well as other sources concerning the job market, and his expertise as a vocational expert to support his testimony, nothing further is necessary to support the ALJ's decision to rely on Mr. Lister's testimony. (Admin. Rec. at 86).

Boggan asserts that pursuant to HALLEX I-2-6-74.B, the ALJ was required to affirmatively "qualify" the VE on the record. (Pl.'s Mot. for Remand (#15)). However, the Commissioner of Social Security's hearings, appeals and litigation manual (HALLEX) is "purely internal manual," has "no legal force" and is "not binding on Commissioner." *Moore v. Apfel*, 216 F.3d 864 (9th Cir. 2000). The ALJ's decision to rely on the VE's qualifications when deciding whether to rely on the VE's testimony is not a reversible error.

Furthermore, in *Villareal v. Colvin*, EDCV 12-01640-JEM, 2013 WL 3071259 (C.D. Cal. June 18, 2013), the court held that information from sources like Job Browser Pro are not conclusive, as they are not the only sources available. The court is also not required to consider the new evidence regarding the number of jobs in the national economy that Boggan submitted for the first time to the Appeals Counsel after the hearing. *Id.* The *Villreal* court refused to accept the claimant's critique of the VE's methodology when the new evidence used to rebut the VE's testimony was not presented to the ALJ or the VE at the hearing. *Id.* The Court stated that it would not remand the case based on new evidence from JBP because doing so would encourage every Claimant "to do at the Appeals Council level what should have been done at the ALJ hearing." The *Villareal* Court applies the reasoning in *Bayliss*, concluding that the VE's testimony is substantial evidence to support the ALJ's decision to deny a

claimant's disability claim, and that the VE's expertise is sufficient foundation for his or her testimony. *Id.* The ALJ's decision to rely on the VE's qualifications was, therefore, supported by substantial evidence.

**2. The ALJ is Permitted to Consider National Job Data in Support of a Finding That Significant Number of Jobs Exist in the National Economy**

Boggan also contends that the ALJ erred in relying to the VE's testimony because the VE did not limit the vocational data to Nevada or "several regions" in the country. (Pl.'s Mot. for Remand (#15)).

This court disagrees. The Social Security act allows for the assessment of a "significant number of jobs" to be at either the regional or national level. *See Beltran v. Astrue*, 700 F.3d 386, 388-90 (9th Cir. 2012) (recognizing that the Social Security Act indicates that the "significant number of jobs" can be jobs existing in a claimant's region of residence or "national jobs"). There is no "bright-line rule" for determining a "significant number of jobs" in the national economy. *Id.* In *Gutierrez v. Comm'r of Social Security*, 740 F.3d 519, 529 (9th Cir. 2014), the court held that 25,000 national jobs was a significant number of jobs in the national economy to support the ALJ's decision. Here, the VE listed three different occupations, all with well over 25,000 national jobs available in the national economy that would accommodate Boggan's restrictions. (Admin. Rec. at 87).

Furthermore, like in *Villreal*, the record contains no evidence that Boggan expressly challenged the vocational expert's use of national data with regards to the number of jobs available in the national economy. (Admin. Rec. at 86-92). Rather, Boggan attempts to rebut the VE's testimony by presenting new evidence from several sources that align with Boggan's argument, and suggests that because the VE did not limit his data to specific regions of the county, the VE's testimony is unreliable. (Pl.'s Mot. for Remand (#15)). Like the court in *Villareal*, this court refuses to entertain the Plaintiff's critique of the VE's methodology on review because Boggan did not challenge the VE's methodology with this new evidence during the hearing. *Villareal v. Colvin*, EDCV 12-01640-JEM, 2013 WL 3071259 (C.D. Cal.

June 18, 2013). Accordingly, this court will not remand this case based on the new evidence relating to the number of jobs in the national economy.

**3. The Inconsistency Between the Vocational Expert's Testimony and the Dictionary of Occupational Titles is a Reversible Error**

Boggan contends that because the VE's testimony regarding Boggan's ability to qualify for the job of call-out operator, and the definition of call-out operator in the DOT was inconsistent, the ALJ's decision to rely on the VE's testimony was not supported by substantial evidence. (Pl.'s Mot. for Remand (#15)). The court agrees.

An ALJ may not rely on a VE's testimony "without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). SSR 00–4p states that "when a VE ... provides evidence about the requirements of a job or occupation, the adjudicator has an *affirmative responsibility* to ask about any possible conflict between that VE ... evidence and information provided in the DOT." SSR 00-4p further provides that an adjudicator must "ask the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT; and if the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict."

The 9th Circuit has held that the procedural requirements of SSR 00-4p are intended to "ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony." *Massachi*, 486 F.3d at 1152. "Thus, the ALJ must first determine whether a conflict exists," and, "if it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Id.* The ALJ is permitted to rely on vocational expert testimony that differs from DOT. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir.1995). However, the record must contain "persuasive evidence to support the

deviation." *Id.* Failure to comply with the procedural requirements of SSR 00-4p can constitute harmless error if "no actual conflict" exists, or "the VE provides sufficient support to justify a variation from DICOT." *Massachi*, 486 F.3d at 1154; *Grimes v. Astrue*, EDCV 09-2208-JEM, 2011 WL 164537 (C.D. Cal. Jan. 18, 2011).

Here, the VE's testimony presents two potential conflicts with the DOT. First, the VE testified that an individual limited to "simple tasks and simple instructions" could qualify for employment as a call-out operator, which the DOT describes as requiring a reasoning level of 3. (Admin. Rec. at 86, 245). Second, the hypothetical presented by the ALJ to the VE expressly requested the VE to testify about jobs with a sit/stand option, and the DOT does not include any language regarding jobs with a sit/stand option. (Admin. Rec. at 245-256). Each is discussed below.

*i. The Inconsistency Between the VE's Testimony Regarding the Job of Call-Out Operator and the Description in the Dictionary of Occupational Titles is a Reversible Error*

Boggan asserts that because the job of call-out operator requires a reasoning level of 3, and Plaintiff is restricted to simple tasks and simple instructions, the VE's testimony claiming that Boggan could perform the job of call-out operator is inconsistent with the DOT. (Pl.'s Mot. for Remand (#15)). The Commissioner contends that the DOT's General Educational Development (GED) reasoning levels are part of the basic education background required for the individual job and do not relate to the mental skills required for a particular job. (Def.'s Opp'n (#20) at 11). This argument is unpersuasive.

The ALJ assessed that, based on Boggan's RFC, he is limited to jobs involving "simple tasks and simple instructions." (Admin. Rec. at 34, 86). The VE testified that based on the DOT, an individual with Boggan's RFC could perform the job of call-out operator. (Admin. Rec. at 87). The DOT describes the occupation of call-out operator as requiring a reasoning level of 3. (Admin. Rec. 245). District courts in the 9th Circuit have held that individuals limited to simple, repetitive tasks are not suitable for jobs

requiring a Reasoning Level 3. *Grimes v. Astrue*, EDCV 09-2208-JEM, 2011 WL 164537 (C.D. Cal. Jan. 18, 2011); *Bagshaw v. Astrue*, 2010 WL 256544, *5 (C.D.Cal.2010); *McGensy v. Astrue*, 2010 WL 1875810, *3 (C.D.Cal.2010); *Tich Pham v. Astrue*, 695 F.Supp.2d 1027, 1032 n. 7 (C.D.Cal.2010). *Etter v. Astrue*, 2010 WL 4314415, *3 (C.D.Cal.2010); *Pak v. Astrue*, 2009 WL 2151361, *7 (C.D.Cal.2009); *Tudino v. Barnhart*, 2008 WL 4161443, *11 (S.D.Cal.2008) ( "Level-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"); *Squier v. Astrue*, 2008 WL 2537129, *5 (C.D.Cal.2008) (reasoning level 3 inconsistent with simple repetitive work). The discrepancy between the description of call-out operator in the DOT, and the VE's testimony creates exactly the type of conflict SSR 00-4p describes. As such, the ALJ was required to ask the VE if his testimony conflicted with the DOT, and to inquire about the reasons the VE's testimony differed from the DOT. Massachi, 486 F.3d at 1152.

The ALJ's failure to do so is not harmless because there is an apparent conflict between the VE's testimony and the DOT, and the VE did not provide sufficient reasons for the deviation. *Id.* at 1154 ("procedural error could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for her conclusion . . . Instead, we have an apparent conflict with no basis for the vocational expert's deviation"). The Commissioner cites no case authority within the 9th Circuit in support of her position. (Def.'s Opp'n (#20) at 11). Rather, the Commissioner cites to decisions in other Circuits that support her argument, but disagree with rulings here in the 9th Circuit. *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir.2007); and *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir.2009). The VE's testimony thus, conflicts with the DOT, and the record does not contain a satisfactory explanation for the VE's deviation. The ALJ's failure to meet the procedural requirements of SSR 00-4p is thus a reversible error, because it cannot be determined if the ALJ's decision at step-five to rely on the VE's testimony in

determining that Boggan could perform other jobs in the nation economy is supported by substantial evidence.

*ii. The VE's Failure to Explain Why the Plaintiff Qualified for Sedentary Jobs Despite Needing a Sit/Stand Option is a Reversible Error*

The VE's testimony in response to the ALJ's hypothetical also deviates from the DOT because the ALJ expressly requested that the VE limit his analysis of jobs to those that offer a "sit/stand option." (Admin. Rec. at 86). "The DOT does not discuss the availability of a sit/stand option." *Lorigo v. Colvin*, 1:13-CV-00405-SKO, 2014 WL 1577317 (E.D. Cal. Apr. 18, 2014); *Buckner–Larkin v. Astrue*, 450 Fed. App'x 626, 628–29 (9th Cir.2011) (unpublished). In *Lorigo*, the ALJ found that the Plaintiff required a sit/stand option. *Lorigo v. Colvin*, 1:13-CV-00405-SKO, 2014 WL 1577317 (E.D. Cal. Apr. 18, 2014). The ALJ requested the VE limit his analysis to jobs that offer a sit/stand option, and the VE cited three jobs that a person with the limitations posed by the hypothetical could perform. *Id.* The court held because the ALJ limited the VE's testimony to jobs with a sit/stand option, the VE's testimony automatically deviated from the DOT. *Id.* As such, the ALJ was required to ask the VE if his testimony deviated from the DOT, and his reasons for the deviation. *Id.* The ALJ's acceptance of the VE's testimony without requesting an explanation for the VE's deviation violated SSR 00-4p, the error was not harmless because of the apparent conflict, and the case was reversed and remanded for further proceedings. *Id.*

Here, the ALJ's found that Boggan required a sit/stand option, and posed that restriction on VE's analysis. (Admin. Rec. 86). The VE testified that Boggan could perform the jobs of call-out operator, final assembler, and dowel inspector without explaining how he reduced the job numbers taking into account the sit/stand option. *Id.* at 87. The VE's testimony in response to the ALJ's hypothetical was therefore, an automatic deviation from the DOT, and the ALJ was required to solicit testimony from the

VE about the deviation. *Lorigo v. Colvin*, 1:13-CV-00405-SKO, 2014 WL 1577317 (E.D. Cal. Apr. 18, 2014). The ALJ's failure to do so was a violation of SSR 00-4p, and the error was not harmless because of the apparent conflict. *Id.* The court, therefore, cannot establish whether the ALJ's reliance on the VE's testimony at step-five was supported by substantial evidence. *Id.*

***D. Remand Is Required***

Pursuant to 42 U.S.C. § 405(g), "the court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." It is thus, within the court's discretion to decide whether to remand a Social Security case back to the Commissioner for further proceedings, or to simply award the Plaintiff benefits. 42 U.S.C. § 405(g); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.1989). If the court finds that remanding a case for further proceedings would serve no useful purpose, the court may exercise this discretion and direct the Commissioner to immediately award a Plaintiff benefits. *See Benecke v. Barnhart*, 379 F.3d 587, 595–96 (9th Cir.2004); *Harman v. Apfel*, 211 F.3d 1172, 1179–80 (9th Cir.2000, as amended May 4, 2000), cert. denied, 531 U.S. 1038, 121 S.Ct. 628, 148 L.Ed.2d 537 (2000). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded." *McAllister*, 888 F.2d at 603. Furthermore, when "there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate." *Allen v. Astrue*, CV 09-7239 JCG, 2010 WL 4825925 (C.D. Cal. Nov. 2, 2010); *see also Benecke*, 379 F.3d at 595–96; *Harman*, 211 F.3d at 1179–80.

Here, there is an apparent conflict between the DOT, and the VE's testimony regarding Boggan's ability to perform the job of call-out operator, and the jobs available with a sit/stand option. Because the

VE's testimony deviated from the DOT, the record must contain persuasive evidence, confirmed by the ALJ asking why VE deviated from the DOT regarding a claimant's exertional abilities, and the jobs the VE identified in his testimony. Failure to solicit such an explanation for the VE's conflicting testimony violates SSR 00–4p and constitutes reversible error. The ALJ's failure to make the required SSR 00–4p inquiry was not harmless, because of the apparent conflict between VE's testimony and the DOT regarding both the requirements of call-out operator, and the sit/stand option. Furthermore, the VE's failure to support his conclusion that the jobs cited offered a sit/stand option also constitutes a reversible error. *Lorigo v. Colvin*, 1:13-CV-00405-SKO, 2014 WL 1577317 (E.D. Cal. Apr. 18, 2014). The ALJ improperly relying on the VE's testimony was thus, a legal error that requiring reversal.

***E. Conclusion***

The District Court's Judicial Review of the Commissioner's decision to deny benefits is limited to determining whether the decision is free from legal error and supported by substantial evidence. Having reviewed the Administrative Record, and 9th Circuit law, the court finds that the ALJ's decision contained a legal error, and was not supported by substantial evidence. Accordingly, the ALJ's decision is VACATED and the case is REMANDED to the ALJ for further proceedings consistent with this order.

//

//

//

//

//

//

//

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the Plaintiff's Motion for Reversal (#15) be GRANTED and the case be remanded for further proceedings consistent with the terms of this report and recommendation.

IT IS FURTHER RECOMMENDED that the Defendant's Motion to Affirm (#20) be DENIED.

IT IS SO RECOMMENDED.

DATED this 22nd day of May, 2014.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE